Thank you, Your Honor. May it please the Court, Troy Boer along with Beth Kennedy on behalf of Appellant Brian Kopeikin, I'd like to reserve four minutes for rebuttal. The plain language of the Montana Statute 23-2736 subsection 4 states that a skier is legally responsible for injury or damage of any kind, quote, to the extent that the injury or damage results from the inherent dangers or risks of skiing. What this means is to the extent that the injury is a result of something else, in this case and all cases across the country addressing this sort of issue, that is resort negligence. If it is a result of resort negligence, then it is not the skier's responsibility, it is the resort's responsibility. Well, but, but, Counselor, I, I hesitate to take you. You took me right to 23-2734. It says results from an inherent dangers and risks of skiing and then you left off 23-2702. 2 says inherent dangers and risks of skiing means those dangers or conditions that are part of the sport of skiing. And D is collisions with natural surface or subsurface conditions such as bare spots, forest growth, understand rocks, absolutely, and other natural objects. F says variations in steepness or terrain, whether the natural or result of the slope design, snowmaking or snow grooming operations, including but not limited to roads, freestyle trains, ski jumps, catwalks, absolutely, and other terrain modifications. And then I goes the failure of a skier to ski within that skier's ability, which really got me because I don't have much ability. But I mean, the bottom line is it seems to me you left off the most important part of the statute. Not at all, Your Honor. It is front and center that 99%, I'll say, of collisions with rocks or terrain or all the things listed in this section that you just read, Your Honor. Those are going to be not only inherent risk of skiing. When that happens, it is going to be that the full extent of the injury was caused by an inherent risk of skiing. The way that the extent language is there at all, because it was inserted after Brewer when the prior statute was declared unconstitutional because it exempted resorts from their own negligence, the to the extent language is there to say if it is caused by an inherent risk of skiing, then it's the skier's responsibility. But to the extent it is because of resort negligence, and resorts have negligence with regard to rocks in very narrow circumstances. Well, I just, well, sorry. Yeah, let me just figure out what the, you know, we've got the rocks on the table or on the mountain at this point, okay. When you were in the lower court, you said that his injury, the doctor's injury was caused by the creation and subsequent modification of a cat track. But then when I read the appellate brief, the focus is on the fact that, in your view, that these rocks that existed differed depending on whether you're looking down and you can't see them or you're looking up the slope, and your view that the resort operator could have covered them up or would have seen them. So which is it? Well, the argument is both, and you're raising a preservation issue, which is implied at least in the response brief. So I'm going to provide the court four citations to where this very can see it in the district courts. Are you arguing still that it was the creation of the cat track was one of the problems? No, well, it was a problem in this sense. Okay, but why, if below you said the injury was caused by the creation and subsequent modification of a cat track, are you abandoning that? We're not abandoning it in this sense, okay. It is abandoned in one sense, okay, that absent the rocks, a cat track as an artificial condition is not what caused the plaintiff to fall, and it is not what alone caused the injury. The way that the cat track plays into this is that the cat track is what obscures the view of the downhill skier in this particular area. Which everybody would know. Any skier would know that. Yes, Your Honor. Of course, you're coming down the mountain, you've got the cat track. You know what you can't see. And so, if these were rocks that the resort knew, and there are some that are just out of bounds that are over there, you can see in the photographs, that are visible from below and above, those are in the inherent risks of skiing because skiers don't mind rocks if they can see them. The question is, does the skier have the opportunity? Do they know what the resort knows, and do they have the opportunity to protect themselves? If the answer is yes, and it's on that list, Your Honor, no liability. Well, but it seems to me what the Supreme Court was saying is, and I read the Supreme Court because I'm not sure I agree with the Montana Supreme Court, but I've got to deal with whatever they say, whether I agree with it or not. They say one cannot sue the ski resort for an inherent risk impossible to eliminate. Correct. Because in that event, there's no negligence. What evidence do I have in this record that these inherent risks were possible to eliminate? So, you can eliminate them in two ways, and we're really not... What evidence do I have in this record? Not your good argument. Cite the record. What evidence is there? Page 17 of the response brief. Quote, if any unusual hazards had been present on Elkhorn, the ski patrollers who conducted the inspections would have marked the hazard. The question here is, did they have a duty to mark the hazard? Had they marked the hazard? But then you also, by the time they took these photos, the testimony is that the snow had moved around a lot, right? Some snow had moved around, and the jury's going to have to consider which snow, how much snow. Absolutely, one of the arguments that I expect Moonlight Basin to make at trial is that the snow is what uncovered every one of the rocks that the district court called a rock garden, and that they couldn't be seen from below that morning. But that's a fact question, Your Honor. It's not the only reasonable inference from this record. But I guess I don't find anything in this record that would suggest that anyone had been close to this particular place, had found rocks that were not inherent risks, and should have then given notice. I have stuff about, well, somebody went someplace up the hill. I have other things that I could get into if I wanted to read my notes. But there's nothing to suggest that somebody at the ski resort could have determined, or should have determined, or would have been at the place to determine that these weren't inherent risks. Your Honor, all three of those are undisputed, and you can see all three of those in the response brief. Number one, at page 49 of the response brief, quote, it is undisputed that Moonlight inspected Elkhorn, the very runnit issue, the day before, the day of, and the day after Kopeikin's accident. Page 17 of the response brief. So lead me on. What difference does that make? That says they went by, they looked at everything, and this was an inherent risk that needed not be noticed. Your Honor, the argument cannot be, the law cannot be, that a resort understands that it has a duty, which on page 17 it concedes, it has a duty to mark unusual hazards, that it was there that day, it could have, and should have seen these. The problem comes again, Counsel, you're assuming facts, not in evidence. In each one of these quotes, I said to myself, if there was nothing which would suggest, given the snow condition when they went by, that this was not an inherent risk, then there's nothing they needed to do, because there's no way it's impossible to eliminate. Your Honor, so supplemental excerpts 102 and supplemental excerpts 99. Supplemental, those two photographs are photographs taken from the downhill perspective, the ski resort's perspective. From the side or below, you can see what the district court called a garden of rocks. It is undisputed in this case that you cannot see that from the skier's perspective. If you have completely buried rocks and the ski resort, when they do the patrol that they do every day to find these very hazards, and they understand that it's their duty to warn if they see the hazard, if you have them completely buried so that no one doing that patrol could have seen them, it's an inherent risk of skiing. If both of them can see. But how does that fit with the statute? Because it also is a situation which your client is well aware of, and which is really read into the statute, that the conditions change constantly. And so I don't assume you're suggesting that there's an obligation of the ski resort to be out there every minute or to monitor every inch by a web view or something. Absolutely not. So given that we don't, the question is, is there anything raised here that rises to the level of a material issue of fact? I believe so, Your Honor. So the rocks that they have a duty to warn about are unique, okay? They're rocks where, from the resort's perspective, they can see that they're there. If they can't see, they don't have a duty to warn about something. Let me interrupt you for just a second as to whether the resort can see them. And here's what I'd like you to concentrate on. The photographs were taken after the accident, right? Yes. And in your undisputed statement of facts, you say that there was a lot of snow moved before the photographs were taken. Correct. How do we know that the photographs depict what the resort could have seen before the accident? Your Honor, the plaintiff at trial is going to argue that there are so many rocks that you can see, the rock garden that the district court saw, that the accident did not dislodge all of those. For all we know, it covered up rocks. You have the obligation, as to the presentation of photographs, to have some testimony that the photographs accurately depict the situation which you describe. But in your disputed statement of facts, you say there was a lot of snow moved around, which directly contradicts that foundational testimony. I don't believe so, Your Honor. Not completely. I think if there were one rock in those photographs and there was testimony that that was the rock that was hit and that that uncovered the snow, then I completely agree with you. Where we have a rock garden and we have those two photographs at supplemental excerpt 102 and 99, where the district court sees a rock garden, I think there is a question of fact, at the very least, whether those rocks were visible from below. It is undisputed that they were not visible from the perspective of the skier, and therefore, it is like all of the cases where there is a hidden danger that triggers a duty to warn on behalf of a resort. And in this case, they admit that they have a duty to warn when they see these. They admit they patrolled for those dangers. And so if there is a question of fact that any of those rocks were visible from below and not visible from above, they were a trap that they had a duty to warn, and there's a disputed issue of fact for the jury. Does that make sure, though, that when we're looking at the rocks and the photos and the skis like this, there is a set of rocks that's over to the left, correct? Yes. Those are the out-of-bounds rocks? I think those are out-of-bounds or close, but at the very least, that particular collection of rocks were definitely visible from above. And if those were the ones that he had hit, that's an inherent risk. He did not. Those are not the ones we're talking about. And I thought that the testimony was those are at the barrier of the slopes. I mean, that's when you look at a rock garden, you might look up there, there's a lot more rocks up there. But when you look at the actual photos, you see really individual rocks that may or may not have been uncovered by the churning of the snow. I think that the resort most certainly will argue that they were not, and will argue that they were. Well, I guess my biggest problem is somewhat similar to what Judge Bea asked you. Seems to me you agree that the ski resort cannot eliminate the possibility of hitting any rocks. Absolutely. And it seems to me that you agree that the ski resort need not even worry about rocks which are inherent risks. Unless they can do something about them. If they can eliminate the danger and the skier can't appreciate it. And it seems to me that you're further saying you have no proof about what happened in this particular area prior to the accident. Your Honor, there's no photograph. All you have is the proof after. The two photographs I'm... Just a minute. Tell me if I'm wrong. It seems to me your photographs are all proof after accident. And they are proofs of accidents seen with all kinds of removing snow and moving snow around. And so it's not really like it was before the accident. Not exactly like it was before the accident. Though at that point you're saying that a district judge should allow that evidence to go to the jury and be enough to give damage. Your Honor, the question... Is that what you're arguing? I'm arguing that... Because that seems like... I go to a traffic accident scene. I know what the traffic accident scene is after. I don't know what it was before. But based on all this evidence I got after, I can go to the jury. Accident reconstruction does exactly that all the time. Juries answer those questions. There's no accident reconstruction here. There is a bunch of photos. And I don't think anybody could accident reconstruct because too many of us ski. Your Honor, I think that a jury can look at these photos. And they will be presented with the argument that these rocks were... Some of them at least. Some of them were probably covered. Maybe some of them were uncovered. But there are so many that the district court called a rock garden. That there are enough that these were visible during the admitted patrol that happened that morning on this very ski run. But do you... I'm looking back again. I'm going back to your allegations. You say that Moonlight Basin had actual and constructive notice and knowledge. Do you have any evidence that they had actual knowledge? I don't think so, Your Honor. I think it's all constructive. I think that's right. We're talking about constructive knowledge. And that comes from the fact that he hit a rock. And what? No, Your Honor. It is not just from the fact that he hit a rock. It is from the photographs that those rocks were visible during that admitted patrol that morning to look for these very dangers and put out warnings for any dangerous conditions. So that's my question, I guess. Do we have any evidence that those rocks were there in that uncovered state during the morning patrol? Yes. And what is that evidence? So supplemental excerpts 102 and 99 are the two photographs looking uphill. The two photographs looking uphill, there are no... And those were taken after the fact? They were taken right after the accident. The skis are still there. And so there are a number of rocks that are uncovered from the downhill perspective and that the jury can conclude from that that at least some of those were there that morning. My problem with that is this, counsel. On the motion of summary judgment, you presented these photographs and you also presented a statement of undisputed facts that a lot of snow was moved prior to these photographs being taken. It seems to me that there's a lack of foundational evidence as to the accuracy of the photographs showing the scene of the accident. Then, Your Honor, they can file a motion in limine at trial to exclude these. They didn't file a motion to exclude them as evidence for summary judgment. That's what I was going to ask you. There was no motion to strike them on their motion for summary judgment. Your response was the photographs. Those were tendered to the judge and they were for the judge and there was no motion to strike them for insufficient foundation. That is exactly right for purposes of summary judgment. Thank you, Your Honor. Thank you. May it please the Court. This is an extremely straightforward case. This is a run-of-the-mill ski accident. The plaintiff was skiing. He came down the run. He hit a rock that was buried in snow. He admits the rock was buried in snow. He admits the rock was unseen. He admits that even if he had stopped directly above the rock, he would not have been able to see it. Montana's ski statute, specifically Section 731, expressly states that the purpose of the statute is to discourage claims against ski resorts and to define the responsibilities of both skiers and ski resorts. If the ski resort in the exercise of reasonable care, the ski patrollers are an example of a reasonable care, could reasonably have seen the rocks from a different vantage point than was seen by the downhill skier, would not that be evidence of negligence if they didn't post a warning? No. Why? Because of the plain language of the statute. Because Section 702, subsection 2, expressly states that rocks, both surface and subsurface rocks, are inherent dangers and risks of skiing. And Section 736, subsection 4, expressly states that the skier assumes all of the inherent risks of skiing. So therefore, there is no duty of the ski resort to mark those. But I understood the Montana Supreme Court to say that risks that were inherently impossible to remove were those types of risks. But if they were inherently possible to remove by a warning sign, then they would not be inherent risks. And, Your Honor, I believe you're quoting from the Brewer case. The Brewer case was deciding and interpreting the 1979 version of the skier responsibility statutes. And then the statutes have, one, since been changed, and two, if you look to the Mead case, which was the second case interpreting the Montana skier statutes, the Supreme Court may hold that the defense of assumption of risk, other than as specified in the Skier Responsibility Act, is not a separate defense. So what the Supreme Court was saying there is that assumption of risk, the inherent risk listed in the statute, that is a defense. And in that case, there is no duty to eliminate those risks. So your position is, if there is a little pile of rocks on the ski slope, and we have 10 accidents, so the ski resort knows that this particular area, for example, is prone to the afternoon sun and the snow melting and exposing the rocks, that even with that knowledge, the ski resort would never have liability because rocks are an inherent risk? Rocks are an inherent risk. But the point is that the rocks... No, no. Would they have liability ever? I don't know, because that's not the facts of the situation. I know it's not, but I need to know your answer to that, because I'm trying to understand where you're drawing your line in the snow, because you're basically saying that any rock injury could never be the subject of liability, as I hear it. Are you saying that? I'm certainly not saying that. I'm absolutely certain that there are circumstances that you could come up with that would create liability. I'm asking you if they knew that there were these rocks that get uncovered because of the afternoon sun, is that knowledge all within duty of ordinary care, or is it somehow excluded from the statute? According to the plain language of the statute, it is excluded. That is not the case before this court, but according to the plain language of the statute, it is excluded. And we know, in fact... So what you're arguing is, if I look at Mead, and I look at the amendments to the statute after Brewer, there is a positive legal exclusion of this liability. We're not looking anymore at impossible to eliminate. Exactly, Your Honor. Brewer, because the statute that existed in Brewer said, essentially, if you are skiing and if you are injured, there is no liability. Then the statute was changed, and specific inherent risks were laid out, and then we have Section 733, which requires the specific duties that the ski resort must accomplish, and then it also says, consistent with the duty of care. So we have essentially three categories of how injuries could be caused. One, they could be caused by a violation of Section 733, which would most likely lead to liability against the ski resort. Two, we have injuries caused by the inherent risk. There is no duty to eliminate those. And then three, we have this other category of injuries that were caused by something other than those two things. And in that circumstance, then you apply the reasonable duty of care that is in the introductory language to Section 733. And the Montana Supreme Court has consistently made clear, but when a statute is clear and unambiguous, as this statute is, that the court may go no further in interpreting the statute. And this statute is clear, it is unambiguous, and plaintiffs don't even argue that it is an ambiguous statute. But instead, they're trying to add additional language to the statute that does not exist in it. On page 17 of their opening brief, they state, and I quote, if Dr. Kopikin's injuries resulted from Moonlight's negligence, then Moonlight is liable regardless of how the skier's statutes are worded. That interpretation would make these ski statutes completely and totally meaningless. It is imposing an ordinary negligence standard on top of the plain language of the statute that simply does not exist. Plaintiff is misrepresenting both the facts and the law to support their argument. They're misrepresenting the facts in numerous ways. First of all, they are repeatedly claiming that Moonlight knew about these rocks. And as the Court, I think, in its questions recognized, there is no evidence to suggest that. Plaintiffs are also repeatedly stating that this area was groomed and that this was the If there is an opening in the statute for liability, I'm just saying if, what they're suggesting is even without actual knowledge that the nature of the photographs and the slope and the location would at least create an inference of constructive knowledge enough to get you to the jury. So that seems to me to be the question you need to answer for us. Right. And that's incorrect. The statute does not say that these are that rocks covered in snow are an inherent risk if the ski resort does not know about them, but they are not an inherent risk if the ski resort does not know about them. That is not what the plain language of the statute says. Similarly, the plain language But that's what the plain language of the statute says if you apply Brewer to it. I agree. If you were if we were interpreting the 1979 version of the statute, that's what we would have to do. But that is not the version of the statute we are interpreting. And Brewer is no longer applicable. And we know that simply by looking at Meade. So what part of 733 was amended to give you this argument? Well, we specifically look to the language in Meade. In Meade, the defendant in that case was making the argument that the ski resort's only duties are those set forth in 733. And in response to that argument, then the Montana Supreme Court said, were we to accept the interpretation of 23 to 733, which is suggested by defendant, it would be immune for liability for its negligence or intentional acts. And then we would have a Brewer problem. But the Supreme Court in Meade was not saying that you that you apply Brewer to every single ski case. You would apply Brewer if as the defendant was making the argument as in Brewer that, excuse me, as in Meade, that the only duties are those set forth in 733. That's not what Moonlight's argument is in this case. I'm trying to figure out what Moonlight's argument is in this case, counsel. Moonlight's argument is that the plain language of the statute. Are you saying that the rule of negligence is trumped by specific language in the ski statute, which lowers the duty of care and in this situation makes it as a matter of law, the plaintiff's fault? Exactly, Your Honor. Where is that language in the ski statute that trumps the idea of negligence? 736, Your Honor. There is no duty to eliminate the inherent dangers and risk of skiing. So therefore, there is no negligence. 736 subsection 4. Plaintiff assumes the risk. I take it the plaintiff would argue that it is not an inherent risk of skiing. If an outcropping of rocks is visible to the ski patrol in time to put up a sign saying danger rocks. I understand that's what plaintiff's argument is, but that's not what the statute says. What about the language of the statute removes that as a possible legal argument for the plaintiff? 736 subsection 4. A skier shall accept all legal responsibility for injury or damage of any kind to the extent that the injury or damage results from inherent dangers and risks of skiing. And then you look at 702 subsection 2 at the definition of inherent dangers and risks of skiing. But my worry is that I didn't think that 736.4 was an amendment after Brewer. I mean, Brewer says what it says, and Meade says what it says, and I'm trying to parse between the two. I wish I had been on the Supreme Court, but it seems to me that 736.4 is exactly what you say it is. And if you take 736.4 and you move it over and talk about 702.2, I can understand your argument. But when I then impose Brewer on that argument, I still come to the opinion or to the general idea that if it's impossible to eliminate, your argument is right. If it's possible to eliminate, your argument is wrong. Well, and I simply think that Brewer is not the law now. Because you look... What part of Meade undoes that? It's actually... Just look at the statute. 702 subsection 2 specifically includes in the definition of inherent risk freestyle terrain and ski jumps. Those are things that are built by the ski resorts. Obviously, those can be eliminated, but they are still within the definition of inherent risks under the statute. And under section 731, those are part of the attraction of skiing. Those are the inherent risks that are part of the attraction of skiing. Those things can be eliminated, but yet the ski resort has no duty to do so. It's just like a subsurface rock, just like the subsurface rock that Dr. Kopeikin hit. There is no duty to eliminate it. And can you point us again to the language then in Meade that you think gets us to that conclusion? There's two things, Your Honor. One, if we're looking at under the final issue in Meade, where they're talking about assumption of risk, and they're talking about the plaintiff there... Excuse me. The defendant there was arguing for adoption of secondary assumption of risk in Montana. And in response to that, these Montana Supreme Courts said, quote, we hold the defense of assumption of risk other than as specified in the ski responsibility statute is not a defense. So that's the first part. And then the second part... I think all that says is you've got your assumption of risk in the statute. There's no common law assumption of risk defense. That's what Meade says in my book. I'm fine with that interpretation. Okay. So then get me to where you're going after that, because I'm still having a tough time, and I'm glad my colleague is asking you these questions about where Meade gets it so we eliminate what we're reading in Brewer. Sure. If you take a close read of Meade under issue one, it would be on page 474, 264, Mont, 465, page 474. It'd be one, two, the third full paragraph there. It says the paragraph begins with second, an interpretation of a statute would give effect. And there, and then they go on to explain that the only time that you have the Brewer problem is if you interpret the ski responsibility statutes to mean that the only responsibility the ski resort has are those set forth in section 733. So your argument is that they have this group of exclusions in effect. Correct. And those exclusions relieve the ski resort of liability. Correct. But if somehow by listing the exclusions it meant that you couldn't have other circumstances of liability, then that would be a problem. Is that what they're saying in Meade? You lost me on just on that last part. If the ski resort's only duties were those set forth in 733, then you have a Brewer problem. Right. And it's only duties, they actually get out of all those duties because they are inherent risks, right? No, no, no, no. They get out of the duties that are where injuries are caused by an inherent risk. Right. But anything that is not caused by an inherent risk, then there's a duty of reasonable care. And that's what the introductory language to section 733 says. Right. So it looks like I am about out of time. I would simply ask that the court apply the plain language of the statute. In this case, the district court went above and beyond what was required by the statute and not only found that this was an inherent risk, but it also found that the defendant in this case complied with his duty of reasonable care by generally warning Dr. Kopekin of unmarked hazards. So we respectfully request that the courts apply the plain language of the statute and affirm the district court's order granting summary judgment. I'm not going to let you go quite yet. I just have a question. So I'm looking at the definition of inherent risk and it says avalanches except on open machine groomed ski trails. So if there is an avalanche on a groomed trail, does this language mean that there could be  On a groomed trail? Yes. Because it says avalanche is an inherent danger, but it says except on a machine groomed trail. Yes. That's exactly what it means. So if there was an avalanche on a machine groomed trail, then you would go to the next question. Did the ski resort act reasonably to try to mitigate the avalanche hazard? All right. Thank you. And just to further answer that question, the Colorado Supreme Court addressed, I guess, almost that exact same situation in the Flurry case. Flurry versus, I believe, it was Winter Park. It was an inbounds avalanche and the court simply analyzed whether that was covered by the inherent risk. They determined it was. That's the end of the analysis. All right. Thank you. Thank you very much. You have some time for rebuttal. Your Honor, I appreciate that. Your Honor, Brewer was a constitutional mandate that the Montana legislature cannot immunize ski resorts for their own negligence. Brewer did not become irrelevant on that point just because the Montana legislature amended the statute. And I believe the operative language in 736 subsection 4 that gets at this is the phrase to the extent that. And what that leaves open is what's described in the case law across the country, which is to the extent that something is caused by the inherent risk of skiing, then the skier is responsible. To the extent it is caused by something else, resort negligence, then the resort can be liable. It is in the statute. But if then the inherent risk includes rocks and rocks buried in snow, how do you get to your position? Because the courts all over again and again say negligence is not listed as an inherent risk of skiing. And that when what is causing the injury is a failure to warn because the resort has a freestanding duty explained in Mead under the Montana statutes not to be negligent. And the list that's provided in the statute is not an exhaustive list. And so they certainly still have that freestanding duty not to act in a negligent manner. If they know about a danger, their general warning is just fine as long as it's a danger that the skier can appreciate. If the skier cannot appreciate it, the general danger is not enough. That's why they patrol. And when they see a danger to a skier that the skier cannot appreciate, they have a duty to warn, a specific duty to warn in those circumstances. That is Montana law. It has to be Montana law after Brewer because Brewer says constitutionally you cannot eliminate ski resorts negligence or immunize them for their own negligence. And if I could, Your Honor, just quickly to diagnose where I think the district court went wrong here. And I would urge the court to look at the supplemental excerpt at 87, which is the plaintiff's deposition. The argument in the district court that I think the district court ultimately bought was that there's undisputed evidence that these rocks were covered from any perspective. And the reason I think that the court got to that conclusion, you can see it in the is because of a construal of the plaintiff's deposition. In the plaintiff's deposition, he's asked, can you see this rock going down the hill? He says no. They say, well, if you went up right up to it and stopped, could you see it? No, I couldn't. Still above it. And I could only see it when my skis penetrated it and knocked it off. That is construed to be an admission that they couldn't be seen from below. And that is not what that deposition testimony says. So those photographs, which are admitted for purposes of summary judgment, provide some evidence that those rocks were visible during that patrol that morning. They concede that if they see a specific danger that the skier cannot, that they will warn the skier. There was not a warning here. So if the jury concludes that they could see those rocks in their morning patrol, they had a duty to warn and didn't. Had they warned, this accident wouldn't have happened. So the accident is a result of a failure to warn to that extent. The resort is liable under Montana law. Thank you, Your Honor. Thank you. Thank you both for your arguments this morning. The case just argued is submitted.
judges: McKeown, Bea, N.R. Smith